## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA     :     CRIMINAL COMPLAINT

         v.              :

                           :     Case No.: 10-8082

NEVIN SHAPIRO                 :

     I, Gregory Yankow, being duly sworn, state the following is true and correct to the best of my knowledge and belief. From in or about January 2005 through on or about November 30, 2009, in the District of New Jersey and elsewhere, the defendant NEVIN SHAPIRO did:

### SEE ATTACHMENT A

     I further state that I am a Special Agent with the Federal Bureau of Investigation, and that this Complaint is based on the following facts:

### SEE ATTACHMENT B

continued on the attached page and made a part hereof.

_____
Gregory Yankow, Special Agent
Federal Bureau of Investigation

Sworn to before me and subscribed in my presence,

April 20, 2010        at        Newark, New Jersey
Date                                City and State

HONORABLE MADELINE COX ARLEO
United States Magistrate Judge          _____
Name & Title of Judicial Officer     Signature of Judicial Officer

## ATTACHMENT A

### Count 1
### (Securities Fraud)

Knowingly and willfully, by use of the means and instrumentalities of interstate commerce and of the mails, directly and indirectly, in connection with the purchase and sale of securities, use and employ manipulative and deceptive devices and contrivances in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon persons,

In violation of Title 15, United States Code, Sections 78j(b) & 78ff, Title 17, Code of Federal Regulations, Section 240.10b-5, and Title 18, United States Code, Section 2;

### Count 2
### (Money Laundering)

Knowingly and willfully engage and attempt to engage in a monetary transaction in criminally derived property, specifically funds constituting and derived from proceeds obtained from securities fraud contrary to Title 15, United States Code, Sections 78j(b) & 78ff, Title 17, Code of Federal Regulations, Section 240.10b-5, and Title 18, United States Code, Section 2, that were of a value greater than $10,000 and that were derived from specified unlawful activity,

In violation of Title 18, United States Code, Section 1957.

## ATTACHMENT B

I, Gregory Yankow, have been a Special Agent of the Federal Bureau of Investigation ("FBI") for approximately seven and one-half years, and I have been personally involved in the investigation of this matter.  The information contained in this Complaint is based upon my personal knowledge, as well as information obtained from other sources, including: a) statements made or reported by various witnesses with knowledge of relevant facts; b) my review of publicly available information relating to NEVIN SHAPIRO, the defendant; and c) my review of documents relating to the involuntary bankruptcy of Capitol Investments USA, Inc. ("Capitol").  Because this Complaint is being submitted for the limited purpose of establishing probable cause, it does not include every fact that I have learned during the course of the investigation.  Where the content of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## The Scheme to Defraud

1.    From in or about January 2005 through on or about November 30, 2009, defendant NEVIN SHAPIRO raised more than $880 million from at least 60 investors, purportedly to finance Capitol, his wholesale grocery distribution business.  In fact, defendant NEVIN SHAPIRO and Capitol had virtually no legitimate business during this time.  Defendant NEVIN SHAPIRO instead used new investor money to fund principal and interest payments to existing investors, in Ponzi-scheme fashion, and misappropriated tens of millions of dollars for personal expenses.

## Background of Capitol Investments USA, Inc.

2.    At all times relevant to this Complaint, defendant NEVIN SHAPIRO was the owner and Chief Executive Officer of Capitol, a Florida corporation with offices in Miami Beach, Florida.

3.    At all times relevant to this Complaint, defendant NEVIN SHAPIRO, through Capitol, purported to be operating a wholesale grocery distribution business in which he claimed to buy and sell grocery products for a profit.

4.    Purportedly to finance the operations of Capitol, defendant NEVIN SHAPIRO and others under his direction solicited investors to invest their money in Capitol.  Defendant NEVIN SHAPIRO and the others under his direction, in both oral representations and written materials, told investors that their

money would be used to fund Capitol's wholesale grocery business.

5.    To induce potential investors to invest their money in Capitol, defendant NEVIN SHAPIRO directed others to create and show to potential investors documents fraudulently touting the profitability of Capitol's purported grocery wholesale business, including, among other things:

a.    financial statements, including profit and loss statements, which fraudulently represented that Capitol's wholesale grocery business was generating tens of millions of dollars in annual sales;

b.    personal and business tax returns for defendant NEVIN SHAPIRO and Capitol, fraudulently reflecting tens of millions of dollars in annual sales; and

c.    numerous invoices fraudulently reflecting transactions Capitol purportedly entered into with other companies in the wholesale grocery business which showed claimed sources of product and income.

6.    In most instances, defendant NEVIN SHAPIRO and others under his direction provided investors with promissory notes reflecting the amount of their investment in Capitol and a schedule, varying from a matter of days to one year, for the payment of interest and the return of principal.  The interest defendant NEVIN SHAPIRO and Capitol promised investors ranged from 10 percent to 26 percent on an annual basis.

7.    Based on these representations, the investors sent defendant NEVIN SHAPIRO money, which was deposited into Capitol's bank accounts and into defendant NEVIN SHAPIRO's personal bank accounts.

8.    During the time period relevant to this Complaint, Capitol and defendant NEVIN SHAPIRO raised more than $880 million from at least 60 investors in New Jersey and throughout the United States.

## Materially False and Misleading Statements

9.    Witnesses and documents obtained in connection with this investigation have revealed that during the time period relevant to this Complaint, defendant NEVIN SHAPIRO and others under his direction made numerous materially false and

2

misleading statements to investors concerning Capitol's use of investor money.

10.   Contrary to defendant NEVIN SHAPIRO's written and verbal representations, the investigation has revealed that defendant NEVIN SHAPIRO and others under his direction did not use investor money to fund Capitol's wholesale grocery business as promised.   Indeed, bank records and witnesses reveal that defendant NEVIN SHAPIRO and Capitol had virtually no income-generating operations at all.

11.   Witnesses and documents have revealed that the financial statements, tax returns, and invoices described in paragraph 5, above, contained materially false and misleading information concerning the volume and profitability of Capitol's business.   For example, contrary to the statements in these fraudulent documents:

a.   Capitol had no active wholesale grocery business during the time period relevant to this Complaint;

b.   Defendant NEVIN SHAPIRO and Capitol did not produce tens of millions of dollars in yearly sales based on any legitimate business activity.   In fact, Capitol had virtually no business sales, and a vast majority of the money that came into Capitol was through the solicitation of investor money; and

c.   Capitol did not have the sources of product and income reflected in the invoices.   In fact, Capitol conducted no legitimate business transactions with the entities during the time period relevant to this Complaint.

12.   Instead of using investor money as promised, defendant NEVIN SHAPIRO, in order to perpetuate the fraudulent scheme, used new investor money to make principal and interest payments to existing Capitol investors.

## Misappropriation of Investor Funds

13.   Furthermore, at various times during the scheme, defendant NEVIN SHAPIRO misappropriated approximately $35 million for his personal use.   He used a portion of this misappropriated investor money to fund his lavish lifestyle, including purchasing expensive luxury items.   For example, defendant NEVIN SHAPIRO used investor funds to pay:

a.   millions of dollars in debts resulting from illegal gambling on sporting events;

3

       b.   more than $400,000 for floor seats to the Miami Heat professional basketball team;

       c.   approximately $26,000 monthly for mortgage payments on his residence in Miami Beach which was recently appraised at approximately $5.3 million;

       d.   approximately $7,250 monthly for payments on a $1.5 million dollar Riviera yacht;

       e.   approximately $4,700 monthly for the lease of a Mercedes-Benz automobile; and

       f.   for a pair of diamond-studded handcuffs, which he gifted to a prominent professional athlete.

14.   In addition, defendant NEVIN SHAPIRO also used more than $150,000 in misappropriated investor funds to finance donations to the athletic program of a local university in the Miami area.  As a result of a 10-year gift to the university, the Nevin Shapiro Student-Athlete Lounge at the university was named for defendant NEVIN SHAPIRO.

15.   On or about November 30, 2009, certain Capitol investors to whom defendant NEVIN SHAPIRO and Capitol had failed to make required principal and interest payments filed an involuntary bankruptcy petition against Capitol.  As of today, defendant NEVIN SHAPIRO and Capitol owe more than $80 million to investors.

## Securities Fraud & Money Laundering

16.   From in or about 2005 through in or about October 2006, an investor, "RK," invested approximately $5.4 million with defendant NEVIN SHAPIRO and Capitol through RK's New Jersey-based company.

17.   On or about January 5, 2006, defendant NEVIN SHAPIRO placed a telephone call to RK in New Jersey to solicit RK to invest money in Capitol.  Defendant NEVIN SHAPIRO told RK that the money would be used to fund Capitol's wholesale grocery business.

18.   On or about January 5, 2006, RK transferred approximately $200,000 from his personal bank account in New Jersey to his business bank account.  RK then forwarded the approximately $200,000 to defendant NEVIN SHAPIRO by causing a

wire transfer of funds from RK's business bank account to Capitol's bank account in Florida.

19.    Contrary to his representations to RK, defendant NEVIN SHAPIRO did not use RK's money to fund Capitol's wholesale grocery business.  Instead, Capitol's internal account records and Capitol's bank records reveal that defendant NEVIN SHAPIRO used most of the funds to make principal and interest payments to other investors.

20.    On or about January 10, 2006, defendant NEVIN SHAPIRO, through the use of the fictitious invoices described in paragraph 5 above, caused another investor to send Capitol approximately $126,725 purportedly to fund Capitol's wholesale grocery business.

21.    That same day, defendant NEVIN SHAPIRO misappropriated the approximately $126,725 sent to Capitol and used it, together with other investor funds, to wire approximately $202,000 from Capitol's bank account to RK's business bank account.

22.    Through the scheme, defendant NEVIN SHAPIRO defrauded investors out of at least $80 million.